IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARITZA Y. FLORES,                    :
                Plaintiff,            :        CIVIL ACTION
                                      :
                                      :        NO. 19-2256
                v.                    :
                                      :
ANDREW M. SAUL[1],                    :
Commissioner of Social Security,      :
                Defendant.            :

### <u>**MEMORANDUM OPINION**</u>

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                          December 31, 2020

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of the Social Security Administration ("Commissioner"), which

denied the application of Maritza Y. Flores ("Flores") for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act").  Presently before

the Court is Plaintiff's motion for summary judgment and accompanying Brief and Statement of

Issues in Support of Request for Review ("Pl. Br.") (Doc. 22); Defendant's Response to Plaintiff's

Request for Review ("Def. Br.") (Doc. 23); Plaintiff's Reply in Support of Request for Review

(Doc. 24); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Docs.

13 & 14) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ and to

remand the matter to the Commissioner for a calculation of benefits.  The Commissioner seeks the

---

[1] Andrew Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, therefore, he should be substituted for Nancy A. Berryhill as
Defendant in this suit.  No further action need be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

entry of an order affirming the decision of the ALJ.  For the reasons set forth below, we grant the request for review and remand for further consideration.

## I.      FACTUAL AND PROCEDURAL HISTORY

Flores filed her claim for SSI on June 10, 2014, alleging disability beginning on August 19, 2013.  She had a 9th grade education and no prior work history, as she left school when she became a mother and thereafter raised four children.  She was 39 years old when she applied for benefits.  In her application materials, she identified a number of conditions that she believed prevented her from working, including residual stomach problems following the removal of her gall bladder in 2000; pelvic and back pain from uterine fibroids; migraines; and depression.  (R. 108, 360, 371.) She began hormone injections to treat her menstrual issues in September 2013. She also underwent a pelvic laparoscopic surgical procedure in July 2014.  (R. 383.).

The state agency denied her claim on July 31, 2014, and Flores requested a hearing with an ALJ.  At the time the state agency denied her claim, it had gathered records only from the clinic where she treated for primary care and her gynecological problems.  Around this same time, however, Flores began outpatient mental health treatment Citywide Community Counseling Services.  (R. 382.)  Upon intake with therapist Jose Bautista, M.A., she described experiencing both depressed and anxious moods, mood swings, panic attacks, racing thoughts, and sleep problems. (R. 640.)  In the initial psychiatric evaluation conducted at the clinic on August 8, 2014, psychiatrist John Reitano, M.D., noted her complaints of labile mood, insomnia, and a progression of moods from hyper then tearful, to withdrawn and then angry.  He diagnosed Bipolar 2 and assessed her GAF score as 55.  (R. 644.)  He prescribed Xanax, which she had been taking for a few weeks under a family member's prescription.  At monthly medications checks thereafter, he added and changed other medications -- Lamictal, Depakote, and Topomax at different times in

2014 and 2015; then Trazadone and Abilify in 2016 and 2017 – in an effort to improve her sleep and stabilize her moods, while avoiding side effects such as dizziness.  (R. 672-93.)  Throughout, Dr. Reitano noted her continued mood lability and her "somatic" concerns.  At her annual re-evaluation on October 11, 2016, he documented her complaints of mood lability, "a lot of tearfulness," panic attacks, insomnia, forgetfulness, and preoccupation with her health and ailments.[2]  (R. 1131.)  On mental status examination, he found her to have appropriate grooming, normal behavior, a cooperative attitude, congruent affect, a goal-directed thought process and normal thought content, intact concentration and memory, and fair insight and judgment.  He also, however, documented her speech as "fast/pressured," her thought process as involving "somatic concerns," and her mood as both anxious and labile.  (R. 1132-33.)

Flores obtained counsel in advance of her hearing before an ALJ, and counsel in turn obtained and submitted to the ALJ records of her medical and mental health treatments since her claim had last been evaluated in 2014.  When Flores and counsel appeared at the hearing scheduled by the ALJ for May 17, 2016, however, the ALJ commented on the lack of development by the state agency of evidence as to Flores's mental impairment.  The ALJ elected to order a psychological consultative examination of Flores.  Clinical psychologist Jeremy Schwarzbaum, Psy.D., evaluated Flores on June 3, 2016 and prepared a narrative report accompanied by a medical source statement reflecting his assessment of Flores's limitations.  Following that report, another

---

[2] These health ailments and concerns included Flores's fear of breast cancer due to lumps in her breasts; uterine polyps; chronic pelvic pain that was non-responsive to medical management and ultimately required a hysterectomy (R. 972-1000); and diarrhea.  With respect to the latter, Flores saw a gastroenterologist, who in October 2014 wrote a letter "to whom it may concern" that Flores "cannot leave her house because of diarrhea."  (R. 805.)  In November 2015, that specialist noted Flores's complaint of 30 days of diarrhea, although her condition improved by March 2016 after a change in medications.  (R. 694-97.)  A bout of abdominal pain was diagnosed at an emergency room visit in May 2017 as diverticulitis.  (R. 1289-1312.)

hearing was scheduled for October 6, 2016.  When Flores and counsel again appeared, the ALJ explained that he had just reviewed Dr. Schwarzbaum's report and was not confident that it was reliable.  He ordered another psychological consultative examination.[3]

Flores was examined by Charles Johnson, Psy.D., on October 26, 2016.  After Dr. Johnson's materials were circulated, counsel advised the ALJ by letter that he objected to Dr. Johnson's submission.  He contended that the checked responses in the medical source statement form that Dr. Johnson completed were not supported by his narrative report.  (R. 1410.)

The ALJ convened a third hearing on February 16, 2017, at which Flores again appeared with counsel.  The ALJ noted that she appeared to be about to fall asleep.  (R. 1397-98.)  Flores testified that she had been experiencing diarrhea four to five times a day.  An impartial vocational expert ("VE") testified regarding the vocational implications of the RFC opinion of Dr. Schwarzbaum, the first examiner, and also testified that a need for bathroom breaks lasting five minutes every hour during the workday would render a person unable to sustain substantial gainful activity.  (R. 1410.)  The ALJ closed the record, but when he was later drafting his decision, agency

---

[3]  Even the ALJ recognized that this was a somewhat unusual course to take.  As he explained at the outset of the October 16, 2016 hearing:

> This is only about the third time I've ever done this in 22 years as a Judge.  I'm going to order another exam, because I have my opinions about the one that's in there [from Dr. Schwarzbaum].  I'm not going to give it any weight unless the new person would say the same thing.  Okay?  She sat there and cried during the exam, and he gives her extreme limitations.  And it's – it just doesn't jibe with his report. So, we're not having a hearing today.  I'm going to have another exam, and we'll see what happens.

(R. 65.)  While counsel argued that Flores cried through the consultative examination because "she's very disabled," the ALJ countered that he was concerned about the validity of the report due to her emotionality during the examination.  (*Id.*)

staff noted that he had not clearly posed to the VE a hypothetical question involving a particularized RFC finding.  Accordingly, the ALJ convened a fourth hearing on June 14, 2017 at which a different VE was present.  She testified that the limitations that Dr. Schwarzbaum rated as "extreme" would mean that all work was precluded, but that the more limited restrictions that Dr. Johnson found would permit work.

On July 27, 2017, the ALJ finally issued a written decision regarding Flores's application. He found that she had not been disabled at any time since the date of her June 10, 2014 application in that her only limitation was to simple, unskilled work.  (R. 93.)  Flores asked the Appeals Council to review the decision, and it granted the request.  In an order dated December 1, 2017, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for further examination of the criteria applicable to mental health impairments, for further citation to the record supporting assessed limitations, and for the ALJ to obtain evidence from a VE to clarify the effect of the assessed limitations on Flores's occupational base and resolve other vocational issues. (R. 102-03.)

The ALJ convened the remand hearing on April 4, 2018.  A third VE appeared and testified that Flores's GAF scores assessed by Dr. Reitano in his evaluations at Citywide Community Counseling, which were in the moderate range, were not preclusive of simple, unskilled work.  (R. 46.)  The VE also testified that moderate limitations in social interactions did not preclude work and that there were unskilled, simple jobs that did not require quotas or production.  As counsel reported to the ALJ at the hearing that Flores had provided a medical source statement form to Dr. Reitano shortly, the ALJ left the record open for submission of that opinion.  Dr. Reitano, with what appears to be the assistance of Mr. Bautista, the therapist, competed a Functional Assessment form the next day.  He indicated in the form that he anticipated that Flores's impairments or

medication side effects would cause her to be absent from work for more than three times per month and that she would be unable to perform any work-related task. Where asked to rate the degree of her functional limitation in particular areas, he identified her limitation in each instance as either marked or extreme. (R. 1391-94.) At the time Dr. Reitano completed the form and since initially evaluating her in August 2014, he had seen Flores approximately monthly for 3 ½ years, as reflected in for 38 progress visits or re-evaluations in the record through February 2018.

The ALJ included this opinion in the record. On June 26, 2018, however, he issued another unfavorable decision, again finding that Flores was capable of simple, unskilled work, although he also recognized limitations to only occasional interactions with others, and he precluded her from quotas or production-paced work. (R. 15.) Flores again requested review in the Appeals Council, but on March 22, 2019 that body determined that there was no reason to set aside the ALJ's decision, rendering it the final decision of the Commissioner. This litigation followed.

## II.    STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Flores could perform jobs that exist in sufficient numbers in the national economy is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *See also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d

at 552). The review of legal questions presented by the Commissioner's decision, however, is

plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. DECISION UNDER REVIEW

The issue before the ALJ at the time of the June 26, 2018 decision under review was

whether Flores had been disabled within the meaning of the Act at any time since June 10, 2014,

the date on which she filed her application for SSI. The ALJ applied the five-step sequential

evaluation process set forth in 20 C.F.R. § 416.920(a) to reach his conclusion. At Step One, he

found that Flores had not engaged in substantial gainful activity since the alleged onset date. (R.

12.) At Step Two, he found that Flores suffered from severe, medically-determinable impairments,

specifically bipolar disorder and an "unspecified anxiety disorder." *Id.* At Step Three, he

concluded that Flores did not have an impairment or combination of impairments that satisfied the

criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 416.920(d),

416.925 and 416.926). (R. 13.)

The ALJ then considered Flores's residual functional capacity ("RFC"), which is defined

as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ

determined:

> **4. The claimant has the residual functional capacity to perform
> a full range of work at all exertional levels but with the following
> nonexertional limitations: limited to simple, unskilled work
> (SVP 1 or 2); only occasional interactions with supervisors, co-
> workers, and the public; and no quotas or production-paced
> work.**

(R. 15.) He justified his RFC finding with a discussion that concluded as follows:

> In sum, the above residual functional capacity assessment is
> supported by the following: the opinion of Dr. Johnson [the second
> consultative examiner]; generally routine, conservative treatment
> for mental impairments with therapy no more than weekly and
> medication management no more than monthly; findings on exam
> that the claimant was generally alert, fully oriented, and in no acute

> distress with appropriate behavior, appropriate grooming,
> appropriate social skills and manner of relating, cooperative attitude,
> depressed/anxious mood and affect, grossly intact memory, logical
> and goal-directed thought processes, intact concentration, and no
> ongoing psychosis or suicidal/homicidal ideation; GAF scores
> beginning at 52 and increasing to 60 over time with treatment; the
> claimant's denial of problems interacting with family, friends,
> neighbors, or authority figure[s], and the claimant's reported ability
> to pay attention, follow instructions very well, and finish what she
> starts (Exh. 2E, 6F, 10F, 13F, 15F, 17F, 19F, 21F, 22F).[4]

(R. 17.)

As Flores had no past relevant work against which to compare her current RFC, the ALJ moved past Step Four and proceeded to Step Five, at which he was to assess whether Flores was capable of performing any jobs that exist in significant numbers in the national economy considering her age (as a "younger individual" as of her application date), her limited education, her English language skills, and her RFC.  At the fourth and final hearing, the VE had agreed that there were simple, unskilled jobs, such as cashier, machine feeder, inspector, and packer, that did not require quotas.  (R. 49.) She had also testified that moderate limitations in interacting with others was not preclusive.  (R. 48.)  Citing to this testimony, although mischaracterizing it in his decision, as we discuss below, the ALJ concluded that Flores was capable of performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R.18.)

## IV.   DISCUSSION

Flores contends that the ALJ's RFC finding — that she is capable of performing substantial gainful activity so long as it is simple and unskilled, requires no quotas or production pace, and requires no more than occasional interaction with others — is the product of legal error.  She points

---

[4]  The exhibits cited by the ALJ consist of the disability report form that Flores completed, the Citywide Community Counseling records, and the report of Dr. Johnson's consultative examination and its accompanying medical source statement.

to three alleged errors, each of which she believes warrants remand with a direction to award benefits. The first concerns the ALJ's rejection of the opinion of the treating psychiatrist, Dr. Reitano. The second, concerns the ALJ's allegedly improper discounting of the opinion of the first consultative examiner, Dr. Schwarzbaum. The third and final alleged legal error, which contains several subparts, concerns the ALJ's reliance on allegedly flawed testimony from the VE. (Pl. Br. at 5.)

We will begin with the issues concerning the ALJ's Step Five determination that purported to rely on the VE testimony. We find that the question concerning the VE evidence provides a clear basis to vacate the ALJ's decision. We will then address some of Plaintiff's concerns about the ALJ's reconciliation of the opinion evidence from Dr. Reitano and Dr. Schwarzbaum. While we share some of Plaintiff's concerns, we conclude that it is not appropriate for us to re-weigh evidence and make a finding of disability. Rather, as we set forth below, we will direct upon remand that a new ALJ examine the opinion evidence *de novo*.

A.      **Reliance upon VE testimony**

In the third argument Plaintiff sets forth in her brief in support of reversal, she contends that the ALJ's decision is premised on legal errors and is not supported by substantial evidence in three respects. She contends first that the ALJ erred by relying upon the VE's responses "to discrete questions" that failed to include all of her mental and physical limitations. Second, she contends that the ALJ did not ask the VE to identify examples of appropriate jobs and state the incidence of those jobs in the national economy. Finally, she faults the ALJ for not asking the VE about any possible conflicts between her testimony and the information provided in the Dictionary of Occupational Titles (the "DOT"). (Pl. Br. at 19.) We agree that these are fatal defects.

### 1.    Legal standards

It is well-established that a hypothetical question to the VE upon which the ALJ relies must include all of a claimant's impairments that are supported by the record.  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).  While the hypothetical question need not include all impairments *alleged* by the claimant, it must accurately portray the claimant in light of the ALJ's RFC finding so that the VE's answer to the question may be considered substantial evidence in support of the ALJ's decision.  *See Ramirez*, 372 F.3d at 554; *Rutherford v. Barnhart*, 399 F.3d 546, 665 (3d Cir. 2005).

### 2.    "Piecemeal" nature of ALJ's questions to VE

Plaintiff first complains that the ALJ posed his hypothetical questions in a piecemeal fashion that failed to incorporate all of Plaintiff's limitations.  She notes that the ALJ asked the VE about the three limitations reflected in what became his RFC finding, but he did not ask about all three of those limitations in the same hypothetical person.[5]  The hearing testimony bears out this defect.

Early on in the April 4, 2018 hearing, the ALJ asked the VE about the vocational implications of the opinions of the two consultative examiners.  The ALJ pointed out that Dr. Schwarzbaum rated the claimant's ability to react appropriately in the work environment, as shown by her crying throughout the evaluation, as "extremely limited," which meant that "she couldn't do anything."  (R. 43.)  *See also id.* (reflecting VE's agreement with ALJ that it would mean "she

---

[5]  As Plaintiff also hinted in her brief, to characterize the ALJ as having "asked" questions of the VE is perhaps giving the ALJ too much credit.  The ALJ's style through the several hearings in this case in which a VE participated was to engage in a conversation with the witness.  Rather than posing questions to the VE, he tended to make a statement and allow time enough for the VE to voice her consent before moving on with another leading statement.  It was perhaps as a result of this style of "questioning" that the ALJ failed to pose hypothetical questions of the VE at the final hearing that matched his ultimate RFC finding.

can't sustain any work at all," no matter the exertional level).  The ALJ then asked the VE about the statement of Dr. Johnson, whose opinion about moderate limitations as to complex work tasks would not have precluded *unskilled* work.  The ALJ noted that the limitations as to interpersonal interactions were rated as "none" or "mild," which the VE interpreted to have "no effect" on the ability to work in a general sense, although she "[w]ould just avoid something like a cashier job." (R. 44.)

After an exchange with counsel, the ALJ then returned to the VE with the line of questioning that veered into the problematic:

> BY ADMINISTRATIVE LAW JUDGE [OF VOCATIONAL EXPERT]:
>
> Q      … [T]he Appeals Council said that when I questioned the VE last time, I did not account for moderate difficulties in interacting with others, namely coworkers, supervisors and the general public.  Is that preclusive of work or not?
>
> A      No.
>
> Q      Does not account for moderate difficulties in concentration, persistence or pace.[6]  Same answer.
>
> A      Yeah.  No.
>
> Q      And dealing with – such as, I like this, such as dealing with work requiring quotas – is that unskilled work?
>
> A      I'm sorry?
>
> Q      Requiring quotas, is that unskilled work?
>
> A      Yeah.  There are some jobs that don't require quotas.
>
> Q      But that could apply to unskilled work.
>
> A      Yes.

---

[6]  We infer that the ALJ was reading aloud from the Appeals Council remand order in this portion of the "questioning" of the VE.

Q      Production work?

A      Yes.

Q      But cashier, does that require –

A      No.

Q      No quota.  No production there?

A      No.

Q      A machine feeder, tender, how about that?

A      No.

Q      Inspector?

A      No.

Q      Packer?

A      No.

Q      None of them have quotas or production involved.

A      No.

Q      Pace, that's important.  The person does have to –

A      Has to keep persistence.

Q       -- maintain a pace –

A      Yes.

Q      -- that is going to satisfy an employer.

A      Right.

Q      And we find nowadays that if they cannot sustain the work for, like, in the hour, in the day, in the week, and even long-term, at least to 80% --

A      Then there's a problem, yeah.

Q      – they're going to be fired.

A      Yes.

Q     That we call off task.

A     Right.

Q     And –

A     Or absent.

Q     Or pace, such as dealing with – oh, that was.  Pace.  I have pace in there.  That was with the quotas.  And then the level of complexity, unskilled is SVP 1 and 2.

A     1 and 2.

Q     So there's millions of light and sedentary – I usually write off medium –

A     Not millions, but –

Q     -- because most women aren't doing medium work anyway.

A     Yeah.

Q     Nationwide that do not require any of these parameters.

A     That's correct.

Q     But you must be on task.

A     Yes.  You have to be doing the job.

(R. 48-50.)  The ALJ was satisfied with this testimony and concluded the hearing.

As we analyze this record, we see testimony that a claimant who has limitations in social interactions may still be able to work, but we lack testimony that there are jobs for such an individual who is *also* restricted to work at SVP level 1 or 2 and who cannot work in jobs involving quotas or requiring a production pace.  And yet that is the vocational profile that the ALJ attributed to Flores in his RFC finding.  Given the testimony elicited from the VE at the hearing, the Commissioner did not meet his burden to show that there are a significant number of jobs in the national economy that Plaintiff could perform despite the three non-exertional limitations that the ALJ attributed to her.  The ALJ's decision cannot stand.

### 3.      Misrepresentation of VE's testimony regarding the number of jobs (and of the hypothetical to which the VE responded)

Plaintiff also points to another error that undermines the ALJ's finding at Step Five, which is the step at which the Commissioner bears the burden to produce evidence that work exists in significant numbers in the national economy that the claimant can do, given her RFC, age, education, and work experience.  *See* 20 C.F.R. 416.912(f), 416.960(c).  Plaintiff notes that the ALJ's decision misstates the VE's testimony about the number of jobs that could be performed by someone who was limited to SVP levels 1 or 2 and which didn't require quotas or work at a production pace.  Again, her argument is supported by the record.

In his decision, the ALJ began his discussion of the Step Five analysis with the correct premise but then misrepresented the VE testimony:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations.  To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, I sought testimony from a vocational expert.  Ms. Rosen testified that the opinion in Exhibit 15F[7] would not preclude work at SVP 1 or 2 level.  Furthermore, she acknowledge that there were millions of unskilled jobs that do not involve SVP 3 or higher work, interactions with others, production pace, or quotas.

(R. 18.)   As reflected in the hearing transcript quoted above, however, it was the ALJ who suggested that the VE was identifying job categories that encompassed "millions" of jobs.  And the VE responded that it was "not millions."

The Commissioner responds that the VE "appeared to ultimately agree with the ALJ that there are a significant number of jobs available at these levels within the national economy," and that, "[t]o the extent that the ALJ misstated in the decision that the [VE] 'acknowledged millions of unskilled jobs' would be available," remand is not necessary "because, based on the above

---

[7]  This refers to the medical source statement accompanying Dr. Johnson's report.

testimony, jobs existed within the national economy that Plaintiff could perform within her RFC." (Def. Br. at 11-12.)  We cannot agree that the VE's testimony was sufficient.  It is simply not clear from the record what the VE agreed to in response to the ALJ's consistently leading questions or statements.  Moreover, the best that the VE testified to was the prevalence of jobs that could accommodate SVP levels 1 or 2 and which didn't require quotas or work at a production pace. Her testimony did not incorporate the additional limitation to only occasional interactions with others – despite the ALJ's affirmative statement to the contrary in his decision with the sentence beginning "furthermore" above.  This argument provides another basis to vacate the ALJ's decision and remand for new VE testimony.

### 4.    Inconsistencies with the DOT

Plaintiff next complains that the ALJ failed to determine whether the contours of whatever jobs identified by the VE were consistent with the descriptions included in the DOT.  (Pl. Br. at 23.)  Plaintiff has again identified a deficiency in the ALJ's process, as well as another instance in his decision in which the ALJ glossed over his responsibilities.

As SSR 00-4p explains, when a VE provides evidence about the requirements of a job, "the adjudicator has an affirmative responsibility to ask about any possible conflict" between that testimony and information provided in the DOT.  The Ruling states that the adjudicator "will" ask the VE if the evidence provided conflicts with information provided in the DOT and, if so, obtain a reasonable explanation for the apparent conflict.  SSR 00-4p.

The ALJ here made no such inquiry of the VE.  And while his decision did not even describe any particular position identified by the VE at the hearing that matched his RFC finding, he suggested that he was in compliance with SSR 00-4p, declaring in the decision: "Pursuant to SSR 00-4p, *I have determined* that the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles.</u>"  (R. 18 (emphasis added).)  With

new VE testimony, we trust that a new ALJ will ensure compliance with SSR 00-4p as may be necessary.

### 5.   Whether the hypotheticals to the VE included all non-exertional effects of Plaintiff's impairments

Finally, Plaintiff complains that the questioning of the VE was incomplete because it failed to account for other non-exertional impairments or effects from her impairments.  She specifically identifies the impact of her diarrhea and the fatigue that she experienced as a side effect from her mental health medications.  (Pl. Br. at 23-28.)  These complaints, however, go more to whether the RFC finding was sufficiently broad in recognizing her limitations.  There was no fault in the VE's testimony *per se*.  The proper scope of the RFC in this respect is a matter that may be considered on remand.

### B.   The ALJ's weighing of the opinion evidence is not supported by substantial evidence.

The other half of Plaintiff's challenge is directed to how the ALJ reconciled the reports and medical source statements of Drs. Schwarzbaum, Johnson, and Reitano.  While we have already identified a basis to vacate the ALJ's decision, we appreciate that Plaintiff asks for an affirmative finding from this Court that she is disabled and eligible for benefits.  We also recognize that the opinions of Drs. Schwarzbaum and Reitano, if credited, would support such a finding.  For the reasons set forth below, however, we decline Plaintiff's invitation to render a finding as to disability.

### 1.   Applicable regulations, ruling, and case law

Social Security Ruling 96-8p identifies "any 'medical source statements'— *i.e.*, opinions about what the individual can still do despite his or her impairment(s)"— as part of the relevant evidence to be reviewed by adjudicators.  SSR 96-8p further provides that:

> Medical opinions *from treating sources* about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

SSR 96-8p. *See also* 20 C.F.R. § 416.927(c)(2). If the opinion is not entitled to controlling weight for one of the reasons provided, then the ALJ need not adopt it. However, if the ALJ's ultimate RFC finding "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

The Regulations also make clear that the Commissioner will evaluate every medical opinion in the record and that, unless a treating source's medical opinion warrants controlling weight, then the adjudicator will consider "all of the following factors" in deciding the weight to be given to any medical opinion: (1) examining relationship; (2) treatment relationship, taking into account the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors, such as the familiarity of the medical source with SSA's disability programs and their evidentiary requirements, or the medical source's familiarity with the other information in the claimant's case record. 20 C.F.R. § 416.927(c).

Our Court of Appeals also reminds us that an ALJ "may not make speculative inferences from medical reports" nor make his or her own credibility judgments. *See Morales v. Apfel*, 225 F.3d 310, 17 (3d Cir. 2000). An ALJ's decision may be subject to reversal where the rejection of the claimant's treating doctor's opinion was not supported by objective medical evidence but rather the ALJ's own "amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." *Id.* at 318.

2.   **A new ALJ must allocate the weight among the Medical Source Statements in the record.**

The ALJ determined that Flores had the capacity for simple, unskilled work that did not involve production pace or quotas and where she would have only occasional interaction with others.  In reaching his RFC finding, the ALJ addressed what he saw as the inconsistency between the claimant's statements about the intensity, persistence, and limiting effects of her symptoms with mental health records that reflected what he characterized as conservative treatment and generally appropriate presentation by Flores. He explained that his RFC addressed evidence of occasional labile mood, tearfulness, and fair eye contact; of occasional racing thoughts, anxious mood, suicidal ideation, and somatic focus; and borderline cognitive functioning.  (R. 16.)  As was apparent from his additional discussion, however, he reached his conclusion after determining that the June 3, 2016 opinion of the first consultative examiner, Jeremy Schwarzbaum, Psy.D., was entitled to "no weight."  He justified this on the grounds that "it was based on a one-time examination during which the claimant cried continuously."  (R. 16.)  The ALJ noted that her presentation at all other examinations "was no more than occasionally tearful."  (R. 16.) The ALJ gave "great weight" to the October 26, 2016 opinion of the second consultative examiner, Charles Johnson, Psy.D., as the ALJ found that opinion was "supported by findings on exam and consistent with treatment records showing some depressed or anxious mood but otherwise mostly normal mental status exams and GAFs of 52 and higher (e.g., Exh. 6F, 13F, 17F, 19F, 21F, 22F)."[8] (R. 16.)

The ALJ then provided his analysis of Dr. Reitano's opinion, the last medical source statement added to the record, the only opinion of a treating mental health professional in the

---

[8]   These exhibits were all from Citywide Community Counseling and consisted of her initial psychiatric evaluation, psychiatry notes, medication lists, and therapy notes.

record, and an opinion rendered after 3 ½ years of consistent treatment at the Citywide Community

Counseling clinic:

> The opinion of John Reitano, M.D. finding marked and extreme
> limitations is given little weight (Exh. 24F). Although he is a
> treating physician whose opinion would generally be entitled to
> controlling weight when supported by medical records, Dr.
> Reitano's opinion is contradicted by mental health records revealing
> routine, conservative treatment with mostly normal mental status
> exams, with a noted exception of depressed or anxious mood/affect,
> and increasing GAF scores over time (e.g., [Exh.] 6F, 13F, 17F,
> 19F).   Specifically, the assessment of marked limits in
> understanding, remembering, or applying information is
> contradicted by exams showing the claimant was fully oriented and
> alert with generally intact memory (e.g., Exh. 6F, p. 7; 10F, pp. 1,
> 3; 13F, p. 7; 15F, p. 3; 17F, p. 3).[9]   Dr. Reitano's assessment of
> extreme limits interacting with others is contrary to evidence that
> the claimant was generally cooperative with appropriate grooming,
> adequate social skills, and appropriate behavior (e.g., Exh. 6F, 13F,
> 15F, 17F, 21F, 22F).  Moreover, his assessment of extreme limits in
> concentrating, persisting, or maintaining pace is inconsistent with
> the claimant's ability to complete homework for therapy, her report
> of no problems following instructions or completing tasks, and
> mental status exams showing she generally had logical and goal-
> directed thought processes, no ongoing psychosis or
> suicidal/homicidal ideation, and intact concentration (e.g., Exh. 2E
> [Disability Report completed by claimant]; 6F, p. 6; 10F; 13F, p. 7;
> 15F, [p.] 3; 17F, p. 3; 19F).

(R. 16.)  We find the ALJ's explanation unavailing.

### a)   Dr. Reitano

Plaintiff asserts that the ALJ's decision is unsupported by substantial evidence because he

improperly gave Dr. Reitano's opinion little weight and where his rationale for doing so is

inconsistent with the weight of the evidence.  (Pl. Br. at 7, 9.)   She first contends that the ALJ

mischaracterized her mental health records where he suggested that the treatment notes showed

---

[9] Exhibit 15F, cited by the ALJ, refers to Dr. Johnson's report.  The remainder of the cited exhibits
in this citation sentence, and throughout the remainder of this paragraph, are records from Citywide
Community Counseling, except for the Disability Report otherwise noted.

"mostly normal mental status exams, with a noted exception of depressed or anxious mood/affect," (R. 16), when in fact the psychiatric notes "consistently noted labile moods in her mental status examinations." (Pl. Br. at 9, citing to multiple pages of Admin. Record.) She notes that her therapist's notes also often describe her as angry and/or irritable. (*Id.*) And she notes that Dr. Johnson, in his consultative examination to which the ALJ gave great weight, documented her affect as "anxious and depressed with crying and appearing distressed." (Pl. Br. at 9, citing R. 1003.) She also claims that the records from her mental status examinations by Dr. Reitano, as well as the reports of both consultative examiners, document her deficits in listening and memory, which support Dr. Reitano's finding that she has a marked limitation in understanding, remembering, or applying information. (Pl. Br. at 10.)

We cannot accept Plaintiff's invitation to re-weigh the evidence. The ALJ weighed the opinions against the proper sources --- observations on mental status examination, for example --- and he agreed that Flores lacked the ability to engage in skilled work or tasks requiring reasoning abilities at SVP levels 3 or above. He also accepted that Flores could not perform in a work environment involving quota demands or a particular production pace. In these respects, he did accommodate many of the limitations assessed by Drs. Schwarzbaum and Reitano. We do not find Plaintiff's remaining arguments persuasive in light of our review of the record, although the next ALJ, upon remand and with any supplemental records, is free to weigh the evidence as he or she sees fit.

### b) Dr. Schwarzbaum

Plaintiff's other basis for seeking reversal of the ALJ's decision concerns the opinion of the first consulting examiner, Dr. Jeremy Schwarzbaum. Plaintiff contends that the ALJ improperly discounted Dr. Schwarzman's opinion, when his report from his June 3, 2016 examination was, in fact, well-supported and consistent with the weight of the evidence. In

conjunction with this argument, she also contends that the ALJ improperly gave great weight to the opinion of the second consultative examiner, Dr. Charles Johnson, who examined Flores on October 26, 2016.  She argues that the ALJ failed to adequately consider the factors set forth in the Regulations when he determined the weight to be given to these two opinions.  (Pl. Br. at 14.)

> With respect to the decision to discount Dr. Schwarzbaum's opinion, the ALJ offered this:

> > The opinion of consultative examiner Jeremy Schwarzbaum, Psy.D. is given no weight, because it was based on a one-time examination during which the claimant cried continuously (Exh. 12F). Additionally, the claimant's presentation was different at all other examinations in that she was no more than occasionally tearful.

(R. 16.)  Plaintiff complains that the ALJ "failed to cite any specific medical evidence to support his decision to discount Dr. Schwarzbaum's opinion," and that the ALJ engaged in lay speculation to the extent that he concluded that her crying during the examination impacted the validity of Dr. Schwarzbaum's opinion regarding her limitations.  (Pl. Br. at 15.)  We would agree that this was not a proper reason to reject the opinion, particularly where crying was often a feature of her examinations.  We also note that Dr. Schwarzman expressed concern about the impact of her "emotionality" at the exam only as to his findings concerning impaired memory skills and her attention and concentration and no other aspects of it.  Again, however, it is not the role of this Court to re-weigh the evidence.  This will be done by a new ALJ in the proper course.

## V.    CONCLUSION

Although we are vacating the ALJ's decision, we recognize that we are not providing the full measure of relief sought by Plaintiff.  Plaintiff asks that we reverse the decision of the Commissioner, without remanding the case for a re-hearing, and instead order benefits to be paid to her.  (Pl. Br. at 29.)  She cites to the five hearings that have already been held (only three of which involved any significant testimony) and the six years that have elapsed since she applied for SSI.  She argues that "the Commissioner has not carried *his burden* of demonstrating that Ms.

Flores is *not disabled*." (*Id.*)  She also argues that it would be futile to remand this case where the ALJ has already twice "failed to properly weigh the evidence regarding Ms. Flores's impairments and RFC." (Pl. Br. at 30.)

Our Court of Appeals has found it appropriate to order benefits be paid when "the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates the Claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).  Plaintiff argues that the record *does* establish that she meets the standard of disability in that she believes she meets the severity of two of the mental health listings or, alternatively, because she lacks the RFC to perform jobs that exist in significant numbers in the national economy, for the reasons argued earlier in her brief. (*Id.*)  We are unwilling to make either of those factual findings.  And while it is not Plaintiff's preference to await a new administrative hearing, she can look forward to one being held by a different ALJ.  Should that ALJ's sequential evaluation process proceed beyond Step Three, we trust that the new ALJ will formulate an RFC that accounts for all of the limitations that he or she finds supported in the record and will more carefully inquire of a VE in order to render a finding at Step Five that is supported by substantial evidence.

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE